IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARK FOCHTMAN, CORBY SHUMATE,
MICHAEL SPEARS, ANDREW DANIEL,
FABIAN AGUILAR, and SLOAN SIMMS
individually and on behalf of all others
similarly situated                                          PLAINTIFFS


           v.              Case No. 5:18-cv-05047-TLB


DARP, INC., HENDREN PLASTICS, INC.,
and JOHN DOES 1-29                                          DEFENDANTS

---

BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED
MOTION FOR CLASS CERTIFICATION

---

John Holleman
Arkansas Bar No. 91056
jholleman@johnholleman.net
Timothy A. Steadman
Arkansas Bar No. 2009113
tim@johnholleman.net
Jerry Garner
Arkansas Bar No.2014134
jerry@johnholleman.net

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

Table of Authorities.........................................................................................ii

I.     Introduction ..........................................................................................1

II.    Factual Background ..............................................................................2

       A.     DARP ..........................................................................................2

       B.     Hendren Plastics ........................................................................5

III.   Legal Standard......................................................................................7

IV.    Argument ..............................................................................................10

       A.     The Rule 23(a) Requirements are Satisfied....................................10

              1.   Numerosity: The proposed class is sufficiently numerous
                   such that joinder is impracticable....................................10

              2.   Commonality: The answers to the common questions
                   presented in Plaintiffs' complaint will drive resolution
                   of this lawsuit for all class members ...............................12

              3.   Typicality: The class members' experiences are not unique
                   to them and all proposed class members share the same
                   legal theories......................................................................16

              4.   Adequacy: The Named Plaintiffs will fairly and
                   adequately protect the interests of the class and have
                   retained qualified counsel................................................16

       B.     The Rule 23(b) Requirements are Satisfied ...................................19

              1.   Predominance: The common questions of law and fact
                   predominate over any individual inquiries ..................19

              2.   Superiority: A class action is the superior method of resolving
                   Plaintiffs' and putative class members' common claims against
                   DARP and Hendren...........................................................23

V.     Conclusion ...........................................................................................24

TABLE OF AUTHORITIES

## CASES

*Amchem Prods v. Windsor,*
521 U.S. 591 (1997) ............................................................................9, 19

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,*
133 S. Ct. 1184 (2013) ..............................................................................8

*Ark. Educ. Ass'n v. Bd. Of Ed.,*
446 F.2d 763 (8th Cir. 1971) ...................................................................11

*Arreola v. Godinez,*
546 F.3d 788 (7th Cir. 2008) ...................................................................21

*Beattie v. CenturyTel, Inc.,*
511 F.3d 554 (6th Cir. 2007) ...................................................................21

*Bertulli v. Indep. Assn. of Continental Pilots,*
242 F.3d 290 (5th Cir. 2001) ...................................................................21

*Blades v. Monsanto Co.,*
400 F.3d 562 (8th Cir. 2005) ...................................................................19

*Bonton v. Centerfold Entm't, Inc.,*
No. 6:14-CV-6074, 2015 U.S. Dist. LEXIS 65408 (W.D. Ark. May 19, 2015) ...........20

*Califono v. Yamasaki,*
442 U.S. 682 (1979) ..................................................................................7

*Carnegie v. Household Inter., Inc.,*
376 F.3d 656 (7th Cir. 2004) ...................................................................22

*Casey v. Coventry HealthCare of Kansas, Inc.,*
No. 08-00201, 2010 U.S. Dist. LEXIS 94405 (W.D. Mo. Sept. 10, 2010) ...............10, 19

*CGC Holding Co., LLC v. Broad & Cassel,*
773 F.3d 1076 (10th Cir. 2014) ...............................................................19

*Chiang v. Veneman,*
385 F.3d 256 (3d Cir. 2004) .....................................................................21

*Comcast v. Behrend*,
　　133 S. Ct. 1426 (2013) ......................................................................................21

*DeBoer v. Mellon Mort. Co.*,
　　64 F.3d 1171 (8th Cir. 1995) ...........................................................................16

*Deposit Guaranty Nat'l Bank v. Roper*,
　　445 U.S. 326 (1980) .....................................................................................23, 24

*Donaldson v. Pillsbury Co.*,
　　554 F.2d 825 (8th Cir. 1977) ......................................................................12, 16

*Epenschied v. DirectSat USA, LLC*,
　　705 F.3d 770 (7th Cir. 2013) ...........................................................................22

*Ford v. Townsends of Ark., Inc.*,
　　No. 4:08-cv-00509, 2010 U.S. Dist. LEXIS 46093 (E.D. Ark. April 9, 2010) ........19, 20

*Garcia v. Tyson Foods, Inc.*,
　　255 F.R.D. 678 (D. Kan. 2009) ........................................................................23

*Gen. Tel. Co. v. Falcon*,
　　457 U.S. 147 (1982) ........................................................................................7, 8

*Gilbert v. City of Little Rock*,
　　722 F.2d 1390 (8th Cir. 1989) ...........................................................................8

*In re Workers' Compensation*,
　　130 F.R.D. 99 (D. Minn. 1990) .........................................................................20

*Luiken v. Domino's Pizza*,
　　705 F.3d 370 (8th Cir. 2013) ............................................................................15

*Mace v. Van Ru Credit Corp.*,
　　109 F.3d 338 (1997) ...........................................................................................9

*Menocal v. GEO Grp., Inc.*,
　　882 F.3d 905 (10th Cir. 2018) ..........................................................................19

*Messner v. Northshore University Health System*,
　　669 F.3d 802 (7th Cir. 2012) ..............................................................................8

*Paxton v. Union Nat'l Bank,*
    688 F.2d 552 (8th Cir. 1982) ...............................................................................12, 16, 17

*Robinson v. Sears, Roebuck & Co.,*
    111 F. Supp. 2d 1101 (E.D. Ark. 2000) ...............................................................8, 11, 12

*Tadiff v. Knox County,*
    365 F.3d 1 (1st Cir. 2004)..................................................................................................21

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)...............................................................................7, 8, 12, 13, 15

*Walls v. Sagamore Ins. Co.,*
    No. 07-CV-1020, 2009 U.S. Dist. LEXIS 38574 (W.D. Ark. Mar. 31, 2009) .........10, 11

## RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23.................................................................................................... *passim*

## OTHER AUTHORITIES

Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments
of the Federal Rules of Civil Procedure*, 81 Harv. L. Rev. 356 (1967)...........................................9

Newberg on Class Actions § 4.54 (5th ed. 2012) ..................................................................21

Wright, Miller, & Kane, Federal Practice & Procedure § 1781 (3d ed. 2005) ....................21

iv

# I. INTRODUCTION

This is a class action for unpaid minimum wage and overtime under the Arkansas Minimum Wage Act. Defendant DARP, Inc. claims to provide drug and alcohol recovery services, and Plaintiffs were court-ordered to attend DARP to receive those services. Instead of receiving counseling and treatment, however, Plaintiffs were forced to work for Hendren Plastics, Inc. performing demanding, dangerous manual labor for no pay. Hendren paid DARP directly for Plaintiffs' work, and DARP kept all the compensation. This arrangement was not a secret; DARP and Hendren reaped enormous profits, including reduced labor costs, fraudulent tax savings, and reduced recruiting expenses.

This case is ideal for class treatment. Hendren and DARP's scheme applied to all members of the putative class and the putative class members all assert the same causes of action and seek the same relief. Plaintiffs' and putative class members' claims rise and fall on the same legal and factual issues and there are no individual issues that preclude certification. This Court's Order denying DARP and Hendren's motions to dismiss Plaintiffs' minimum wage and overtime claims, as well as Defendants' own pleadings, confirm that this case presents common questions with common answers that will apply to every member of the putative class and drive resolution of the claims and defenses here. Deciding these common issues on a class-wide basis promotes efficient use of both the Court's and the parties' resources. A class action is the superior method to resolve these claims and the Court should grant Plaintiffs' motion and certify the proposed class.

1

## II. FACTUAL BACKGROUND

### A. DARP

DARP, Inc. ("DARP") purports to be a faith-based alcohol and drug recovery program. (*DARP Mission Statement* [Ex. A]).[1] DARP has two sixty-bed men's facilities in Decatur, Arkansas that housed hundreds of male residents. *See* (*DARP Letter* [Ex. B]). DARP's residents live on the premises. (*Aguilar Dec.* [Ex. C] at ¶ 5; *Crowe Dec.* [Ex. D] at ¶ 5; *Daniel Dec.* [Ex. E] at ¶ 5; *Fochtman Aff.* [Ex. F] at ¶ 18; *Shumate Aff.* [Ex. G] at ¶ 5; *Spears Aff.* [Ex. H] at ¶ 5). DARP provides its residents with "room and board, clothing, and other necessities" while enrolled in the program. (*DARP Admission Agreement* [Ex. X] at ¶ 5). DARP's primary source of referrals is through court-ordered programs, and its revenue is "generated solely through the various employment contracts the D.A.R.P. has entered into to provide employment for [its] participants." (*DARP: Criteria for Admittance* [Ex. I]; *DARP: Introduction* [Ex. J]). Primarily, DARP's residents are ordered to attend the program from various drug courts in Arkansas and Oklahoma. *See, e.g.,* (*Aguilar Dec.* [Ex. C] at ¶ 3; *Crowe Dec.* [Ex. D] at ¶ 3; *Daniel Dec.* [Ex. E] at ¶ 3; *Fochtman Aff.* [Ex. F] at ¶¶ 3, 17; *Shumate Aff.* [Ex. G] at ¶ 3; *Spears Aff.* [Ex. H] at ¶ 3). DARP is a **for-profit** corporation. (*DARP Sec. of State Filing* [Ex. K]).

From the moment they enter the program, DARP assigns its residents to work for various for-profit businesses in Arkansas, including Hendren Plastics, Inc. ("Hendren"). (*Contract Labor Agreement* [Ex. L]) (filed under seal). *See also* (*Aguilar Dec.* [Ex. C] at ¶ 8;

---

[1] "DARP" is an acronym for "Drug and Alcohol Recovery Program." (*DARP Mission Statement* [Ex. A]).

*Crowe Dec.* [Ex. D] at ¶ 8; *Daniel Dec.* [Ex. E] at ¶ 8; *Fochtman Aff.* [Ex. F] at ¶ 19; *Shumate Aff.* [Ex. G] at ¶ 12; *Spears Aff.* [Ex. H] at ¶ 8). DARP contracts with Hendren "to provide a reliable work force" for Hendren's manufacturing operations. (*Contract Labor Agreement* [Ex. L]) (filed under seal). The agreement provides that, regardless of the residents' job duties or position, Hendren will pay DARP a negotiated hourly wage (including additional pay for overtime hours worked) for the "total man hours for all workers[.]" (*Contract Labor Agreement* [Ex. L]) (filed under seal). DARP also ensures that each resident is transported to Hendren to work their shifts and provides workers compensation for all DARP residents working at Hendren. (*Contract Labor Agreement* [Ex. L]) (filed under seal). If a resident does not meet Hendren's standards, DARP will replace them with another employee. (*Contract Labor Agreement* [Ex. L]) (filed under seal).

The ability to work is a central component of DARP's program. It is DARP's policy that all participants are to work full-time jobs for which they will not be paid. (*DARP: Fees and Costs* [Ex. M]). DARP claims that, on average, its residents work 40-48 hours per week. (*DARP-ADC* [Ex. N]). The work is physically demanding, and DARP explains that "[t]he hard work ethic of the program will exclude some with physical and/or mental disabilities." (*DARP: Introduction* [Ex. JJ]). In fact, DARP does not even allow the admittance of residents who have a medical condition that prohibits working. *See* (*DARP: Criteria for Admittance* [Ex. I]). If a resident is unable to work for a short period, instead of being kicked out of the program, extra days are added to the length of time needed to "complete" the program. (*Aguilar Dec.* [Ex. C] at ¶ 7; *Crowe Dec.* [Ex. D] at ¶ 7; *Daniel Dec.* [Ex. E] at ¶ 7; *Shumate Aff.* [Ex. F] at ¶ 8; *Spears Aff.* [Ex. G] at ¶ 7). Prior to 2014, Arkansas

3

Community Correction licensed DARP as an authorized Transitional Housing Facility where parolees could be housed as part of their early release. In 2014, however, ACC withdrew the license because DARP did not pay its residents, including Arkansas parolees, at least the minimum wage for their work. *See* (*ACC Letters* [Ex. O]).

Work, not recovery, is the primary concern at DARP. The Company acknowledges that its "goal is not to educate on the disease of addiction[.]" (*DARP-ADC* [Ex. N]). The program has a revolving door of counselors, most of which have no experience or credentials to treat people suffering from drug or alcohol addiction. (*Shumate Aff.* [Ex. G] at ¶ 6). For example, at one point, DARP employed a resident of a nearby apartment complex as a "counselor," despite the fact the person had no experience or education pertaining to drug or alcohol treatment. (*Shumate Aff.* [Ex. G] at ¶ 6). Moreover, the mandatory "meetings" were entirely led by DARP residents, and drug use was rampant among the residents and staff. (*Crowe Dec.* [Ex. D] at ¶ 6; *Shumate Aff.* [Ex. G] at ¶ 8; *Spears Aff.* [Ex. H] at ¶ 6).

At DARP, everyone must work: if an employee is sick, injured, or otherwise unable to work, they are kicked out of the program and sent to jail. (*Aguilar Dec.* [Ex. C] at ¶ 12; *Crowe Dec.* [Ex. D] at ¶ 13; *Daniel Dec.* [Ex. E] at ¶ 12; *Fochtman Aff.* [Ex. F] at ¶ 22; *Shumate Aff.* [Ex. G] at ¶ 18; *Spears Aff.* [Ex. H] at ¶ 16). As a result, the ever-present fear of incarceration ensures DARP's residents report to work despite physical injuries and sicknesses that would prevent them from working. (*Aguilar Dec.* [Ex. C] at ¶ 12; *Crowe Dec.* [Ex. D] at ¶ 13; *Daniel Dec.* [Ex. E] at ¶ 12; *Fochtman Aff.* [Ex. F] at ¶ 22; *Shumate Aff.* [Ex. G] at ¶ 18; *Spears Aff.* [Ex. H] at ¶ 16).

B.    *Hendren Plastics*

While at DARP, Plaintiffs and putative class members worked for Hendren Plastics. (*Aguilar Dec.* [Ex. C] at ¶ 8; *Crowe Dec.* [Ex. D] at ¶ 8; *Daniel Dec.* [Ex. E] at ¶ 8; *Fochtman Aff.* [Ex. F] at ¶ 19; *Shumate Aff.* [Ex. G] at ¶ 12; *Spears Aff.* [Ex. H] at ¶ 8). Hendren is a manufacturing facility based in Gravette, Arkansas. (*Hendren Website* [Ex. P]). The Company manufactures floatation platforms, insulation products, packaging materials, and other plastics products. (*Hendren Website* [Ex. P]). Hendren engages DARP's residents to work in Hendren's manufacturing facility, typically assigning them to "one of the entry level jobs that require minimal, on the job training." (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 9). "These jobs might include filling the floats with foam, placing caps on the floats, or working in the roto-mold area" where they remove parts from molds. (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 9). Hendren Plastics' CEO is Jim Hendren, the President of the Arkansas State Senate.

Plaintiffs and putative class members worked alongside Hendren's other employees performing the same work. (*Aguilar Dec.* [Ex. C] at ¶¶ 8–9; *Crowe Dec.* [Ex. D] at ¶¶ 8–10; *Daniel Dec.* [Ex. E] at ¶¶ 8–9; *Fochtman Aff.* [Ex. F] at ¶ 19; *Shumate Aff.* [Ex. G] at ¶¶ 12–13; *Spears Aff.* [Ex. H] at ¶¶ 8–9). The work is physically demanding and dangerous; injuries are common and employee turnover is high. (*Aguilar Dec.* [Ex. C] at ¶¶ 8–9; *Crowe Dec.* [Ex. D] at ¶¶ 8–10; *Daniel Dec.* [Ex. E] at ¶¶ 8–9; *Fochtman Aff.* [Ex. F] at ¶¶ 19–21; *Shumate Aff.* [Ex. G] at ¶¶ 12–14; *Spears Aff.* [Ex. H] at ¶¶ 8–10). Plaintiffs and putative class members regularly worked 40 hours per week, and on many occasions, worked more than 40 hours in a workweek. (*Aguilar Dec.* [Ex. C] at ¶ 8; *Crowe Dec.* [Ex.

5

D] at ¶ 9; *Daniel Dec.* [Ex. E] at ¶ 8; *Fochtman Aff.* [Ex. F] at ¶ 20; *Shumate Aff.* [Ex. G] at ¶ 9; *Spears Aff.* [Ex. H] at ¶ 8). Despite performing these dangerous and physically demanding jobs, Plaintiffs and the putative class members were not paid for their work. (*Aguilar Dec.* [Ex. C] at ¶ 11; *Crowe Dec.* [Ex. D] at ¶ 12; *Daniel Dec.* [Ex. E] at ¶ 11; *Fochtman Aff.* [Ex. F] at ¶ 23; *Shumate Aff.* [Ex. G] at ¶ 17; *Spears Aff.* [Ex. H] at ¶ 15). This arrangement was not a secret; Hendren knew Plaintiffs and putative class members were not paid for their work. (*Aguilar Dec.* [Ex. C] at ¶ 11; *Crowe Dec.* [Ex. D] at ¶ 12; *Daniel Dec.* [Ex. E] at ¶ 11; *Shumate Aff.* [Ex. G] at ¶ 17; *Spears Aff.* [Ex. H] at ¶ 15).

Hendren's relationship with DARP is highly profitable. For example, Hendren paid DARP between $9.00 and $9.25 per hour for DARP's residents' work. (*See* Doc. 16, at *6). But when Hendren uses a temporary staffing agency to find other entry-level employees, Hendren pays far more. (*See People Source Staffing Agreement* [Ex. R]). For example, Hendren paid People Source Staffing $13.70 per hour for each temporary employee who worked at Hendren. (*People Source Staffing Agreement* [Ex. R]). Those temporary workers are paid $10.00 per hour. (*People Source Staffing Agreement* [Ex. R]). Not only are temporary employees more expensive, Hendren views those employees as less reliable and more likely to not show up for their shifts. (*People Source Corr.* [Ex. S]). The high turnover makes sense because, as Hendren Plastics' Office Manager has explained, "A lot of people think they want to work [at Hendren Plastics] … until they work here." (*People Source Corr.* [Ex. S]) (ellipsis in original).

Hendren directed the work of Plaintiffs and putative class members, and exercised significant control over them, like it did all of its other employees. Hendren set work rules

6

that Plaintiffs and putative class members were required to follow. (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 9). *See also* (*DARP Orientation Training* [Ex. T]) (discussing anti-harassment policy, dress code, use of personal cell phones, break times, etc.) (filed under seal). Hendren also had the authority to discipline DARP residents, including terminating their work at Hendren Plastics. (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 9). *See also* (*Contract Labor Agreement* [Ex. L]) (filed under seal). Hendren assigned Plaintiffs and putative class members to work certain positions and provided training to those individuals. (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 9). Hendren subjected all DARP residents to the same policies, procedures, and job requirements. (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 9). Despite controlling the terms and conditions of employment, both DARP and Hendren claim that Plaintiffs and putative class members were not employees. *See* (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 2; *DARP Disclaimer of Employment Relationship* [Ex. U]).

### III. Legal Standard

The class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the named individual parties only. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982). When its use is appropriate, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Id.* (quoting *Califono v. Yamasaki*, 442 U.S. 682, 701 (1979)). The party seeking class certification has the burden of establishing the requirements for a class action. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011).

District courts have broad discretion in determining whether to certify a class. *Gen Tel. Co.*, 457 U.S. at 161; *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1399 (8th Cir. 1989). When assessing whether certification is appropriate, a court must independently examine the criteria under Rule 23 and analyze whether the substantive allegations of the complaint are susceptible to class adjudication. *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1114 (E.D. Ark. 2000). The Rule does not set forth a mere pleading standard: district courts must perform a rigorous analysis, probing behind the pleadings if necessary, to ensure the prerequisites of Rule 23 – numerosity, commonality, typicality, adequacy, predominance, and superiority – are met. *Dukes*, 131 S. Ct. at 2541. At times, this inquiry may overlap with the merits of the plaintiffs' claims, just as it does for other preliminary questions such as jurisdiction and venue. *Id.* at 2552 & n. 6. The district court should only consider the merits to the extent necessary to determine whether the Rule 23 prerequisites are satisfied. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) ("[T]he office of a Rule 23(b)(3) certification is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"). In conducting this rigorous analysis, "the court should not turn the class certification proceedings into a dress rehearsal for trial on the merits." *Messner v. Northshore University Health System*, 669 F.3d 802, 811 (7th Cir. 2012) (reversing denial of motion for class certification).

A motion for class certification involves a two-part analysis. First, the Court asks whether the four prerequisites of Rule 23(a) are met, and second, whether the proposed class action fits into one of the three categories identified in Rule 23(b).

Rule 23(a) sets out four requirements:

- **Numerosity**: The class is so numerous that joinder of all members is impracticable;

- **Commonality:** There are questions of law or fact common to the class;

- **Typicality:** The claims or defenses of the representative party are typical of the claims or defenses of the class; and

- **Adequacy:** The representative parties will fairly and adequately protect the interests of the class.

After determining that the requirements of Rule 23(a) have been met, the next step in the analysis is whether the proposed class action falls into any one of the three categories identified in Rule 23(b). Rule 23(b)(3) allows a class action to be maintained if the court finds that questions of law or fact predominate over individual questions and a class action is superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). When creating the 23(b)(3) class action, the Advisory Committee specifically had in mind relatively small claims that plaintiffs had no meaningful ability to bring into court without aggregation. *Amchem Prods v. Windsor*, 521 U.S. 591, 617 (1997) (citing Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure, 81 Harv. L. Rev. 356 (1967)). As the Seventh Circuit stated:

> The policy at the very core of a class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997).

## IV. ARGUMENT

The Court should grant Plaintiffs' motion for class certification. DARP required each Plaintiff and putative class member to work for Hendren Plastics under the constant threat of incarceration, performing dangerous and physically demanding work for no pay. Each Plaintiff and putative class member lived on DARP's premises and were subject to DARP's policies and procedures. Likewise, Hendren applied the same policies and procedures to each Plaintiff and putative class member. All Plaintiffs and putative class members were subject to the same practice at issue in this case and whether that practice violated the Arkansas Minimum Wage Act can be determined collectively. This Court's Order denying DARP and Hendren's motions to dismiss Plaintiffs' minimum wage and overtime claims, as well as DARP and Hendren's own pleadings, make clear the claims of each Plaintiff and putative class member turn on the same issues and resolution of those common questions will determine DARP and Hendren's liability to all class members. Collectively adjudicating these issues will provide real efficiency to the proceedings and does not depend on the resolution of any issues unique to any individual class member.

### A. The Rule 23(a) Requirements are Satisfied.

1. *Numerosity: The proposed class is sufficiently numerous such that joinder is impracticable.*

There is no magic number to satisfy the numerosity requirement. *Casey v. Coventry HealthCare of Kansas, Inc.*, Case No. 08-00201, 2010 U.S. Dist. LEXIS 94405, at *5 (W.D. Mo. Sept. 10, 2010). In establishing numerosity, a plaintiff does not need to show the exact

number of potential class members, only that the number is such that joinder is extremely difficult or impracticable. *Walls v. Sagamore Ins. Co.*, No. 07-cv-1020, 2009 U.S. Dist. LEXIS 38574, at *14 (W.D. Ark. Mar. 31, 2009). Courts have not established any arbitrary rules regarding the size of classes, *Robinson*, 111 F. Supp. 2d at 1120, and the Eighth Circuit has certified a class with only 20 members. *Ark. Educ. Ass'n v. Bd. Of Ed.*, 446 F.2d 763 (8th Cir. 1971).

The numerosity requirement is satisfied in this case. Although Plaintiffs do not know the exact size of the class, Plaintiffs recall working with many different DARP residents, including around 40 just during their tenure with the company. *See, e.g.,* (*Aguilar Dec.* [Ex. C] at ¶ 5; *Daniel Dec.* [Ex. E] at ¶ 5). In addition, a sample of DARP's invoices taken from just five workweeks in 2017[2] reveal over 50 different DARP residents who worked at Hendren. *See* (*Sample Invoices and Summary* [Ex. V]) (filed under seal). This sample does not include all of the putative class members who worked for DARP and Hendren in 2017, let alone those individuals who worked for DARP and Hendren during 2014, 2015, and 2016. Joinder of even 50 individuals in this action would be extremely difficult and joinder of all putative class members would be impracticable. There can be no real dispute that the numerosity requirement is met here.

---

[2] Those weeks include January 5, 2017, March 2, 2017, June 1, 2017, August 17, 2017, and October 31, 2017.

2. *Commonality. The answers to the common questions presented in Plaintiffs' complaint will drive resolution of this lawsuit for all class members.*

Rule 23(a)(2) requires common questions of law or fact among the members of the class. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). The threshold for finding commonality is not high; it only requires "other members of the class who have the same or similar grievance as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). Only one common claim is required, *Dukes*, 131 S. Ct. at 2551, and commonality may be satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Robinson*, 111 F. Supp. 2d at 1120. Answers, rather than questions, are the key to establishing commonality. As the United States Supreme Court noted, "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.

Although the Plaintiffs only need one common question, this case presents several class-wide questions of law and fact, the answers to which will drive resolution of the proceeding, including:

- Whether Plaintiffs and putative class members were employees of DARP under the Arkansas Minimum Wage Act;

- Whether Plaintiffs and putative class members were employees of Hendren Plastics under the Arkansas Minimum Wage Act;

- Whether DARP and Hendren Plastics failed to pay Plaintiffs and putative class members at least the minimum wage for all hours worked;

12

- Whether DARP and Hendren Plastics failed to pay Plaintiffs and putative class members overtime compensation for all hours worked over 40 in a workweek;

- The amount of any credit for facilities DARP and Hendren can lawfully claim against the minimum wage owed to Plaintiffs and putative class members;

- Whether Plaintiffs and members of the putative class are entitled to damages, penalties, and attorneys' fees and costs; and

- Whether DARP and Hendren Plastics have complied with the Arkansas Minimum Wage Act's record-keeping obligations.

These questions satisfy the commonality requirement because they are based on DARP and Hendren's policies and practices that apply to all members of the putative class. These common questions are substantially related to the resolution of the litigation and the answers to these common questions will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

This Court's Order denying DARP and Hendren's motions to dismiss Plaintiffs' claims under the Arkansas Minimum Wage Act, as well as DARP and Hendren's own pleadings, confirm that common questions abound here. In its Order, the Court noted that "[t]he critical issue in the first two Counts of Plaintiffs' Complaint is whether Plaintiffs state a plausible claim that they were Defendants' employees." (Doc. 35, at *4). Both DARP and Hendren concede that whether Plaintiffs and putative class members are "employees" is the central issue to be decided in this case. (Doc. Nos. 14, 16). Whether Plaintiffs are "employees" of DARP and Hendren turn on the Defendants' policies and practices – not on the resolution of any individual issues specific to each Plaintiff and putative class member. *See, e.g.,* (Doc. 35, at *4–7). The Court need look no further than

13

DARP and Hendren's own arguments to confirm that class certification is appropriate here.

Importantly, the common questions are capable of class-wide proof. Every Plaintiff and putative class member was a resident of DARP and required to work at Hendren Plastics during their tenure. (*Aguilar Dec.* [Ex. C] at ¶ 8; *Crowe Dec.* [Ex. D] at ¶ 8; *Daniel Dec.* [Ex. E] at ¶ 8; *Fochtman Aff.* [Ex. F] at ¶ 19; *Shumate Aff.* [Ex. G] at ¶ 12; *Spears Aff.* [Ex. H] at ¶ 8). Plaintiffs and putative class members all worked in "one of the entry level jobs that require minimal, on the job training." (*Hendren's Resp. to Interrog.* [Ex. Q] at No. 9). Despite performing these dangerous and physically demanding jobs, Plaintiffs and the putative class members were not paid for their work. (*Aguilar Dec.* [Ex. C] at ¶ 11; *Crowe Dec.* [Ex. D] at ¶ 12; *Daniel Dec.* [Ex. E] at ¶ 11; *Fochtman Aff.* [Ex. F] at ¶ 23; *Shumate Aff.* [Ex. G] at ¶ 17; *Spears Aff.* [Ex. H] at ¶ 15).

Instead, Hendren paid the wages directly to DARP. (*Contract Labor Agreement* [Ex. L]) (filed under seal). Plaintiffs and putative class members were only provided "room and board, clothing, and other necessities." (*DARP Admission Agreement* [Ex. X], at ¶ 5). *See Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 292–303 (1985) (residents of a putative religious foundation that derived its income from work performed by its residents at commercial businesses were "employees" within the meaning of the Fair Labor Standards Act when the residents received food, clothing, shelter, and other benefits from the foundation.); *see also* (Doc. 35, at *4–7). This common practice applied to every Plaintiff and putative class member.

14

Even calculating damages can be done without individual inquiry. DARP and Hendren recorded the number of hours each Plaintiff and putative class member worked. For Plaintiffs' claims under the AMWA, all that remains is the straightforward mathematical computation of multiplying their hours worked by the AMWA's minimum wage and overtime requirements. The records and other common evidence will provide the tools to calculate damages without the need to question individual class members.

This case is easily distinguished from *Luiken v. Domino's Pizza*, 705 F.3d 370 (8th Cir. 2013), an Eighth Circuit case reversing certification because of an absence of commonality. In *Luiken*, delivery drivers alleged Domino's improperly kept a service charge in violation of Minnesota state law. 705 F.3d at 372. Under the state statute at issue, however, the court was required to consider the context surrounding each individual delivery. *Id.* at 373. This context-based interpretation necessarily required consideration of a wide-variety of circumstances over five years, including variations of what was communicated to the customers. *Id.* "Because varying circumstances guide the statutory standard, the certified class [did not] meet the requirement of commonality." *Id.* at 376.

Here, however, no such varying circumstances exist. DARP and Hendren had a clear policy and practice whereby DARP required Plaintiffs and putative class members to work at Hendren without pay. Working for the assigned employer was necessary for participating in the DARP program and, if a resident refused or was unable to work, they were threatened with incarceration and removed from the program. This practice applied to every member of the putative class. As a result, each question – and the answer – is based on DARP and Hendren's actions, not on any individual facts unique to each

15

putative class member. These answers will drive resolution of this litigation. *Dukes*, 131

S. Ct. at 2551. Plaintiffs respectfully submit the commonality requirement is satisfied.

> 3. *Typicality. The class members' experiences are not unique to them and all proposed class members share the same legal theories.*

Typicality requires "the claims and defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality

requirement "is not onerous," *Paxton*, 688 F.2d at 562, and only requires that there are

other members of the putative class who have the same or similar grievances as the

named plaintiffs. *Donaldson*, 554 F.2d at 830. The burden is "fairly easy to meet so long as

other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mort.*

*Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

As discussed above, the claims and issues in this litigation are common to all

members of the putative class, not just the named Plaintiffs. The named Plaintiffs, along

with all members of the putative class, have claims under the same legal theories and are

based on the same factual issue: DARP's policy and practice of requiring Plaintiffs and

putative class members to work for Hendren Plastics without pay. This policy and

practice gives rise to the same claims for each class member. The typicality requirement

is satisfied here.

> 4. *Adequacy. The Named Plaintiffs will fairly and adequately protect the interests of the class and have retained qualified counsel.*

The representative parties must fairly and adequately protect the interests of the

class. Fed. R. Civ. P. 23(a)(4). A proposed class representative satisfies Rule 23's

requirement where the representative: (1) has common interests with the members of the class; and (2) has retained qualified counsel. *Paxton*, 688 F.2d at 562–63.

Plaintiffs, proposed representatives of the proposed class, will continue to fairly and adequately represent the interest of absent class members. First, their interests are perfectly aligned with those of the proposed class because both Plaintiffs and the proposed class were entitled to be paid for the work they were required to perform. No evidence exists of a current or future conflict of interest between Plaintiffs and the class they seek to represent. Plaintiffs have participated in the litigation process, cooperating with counsel to provide whatever assistance was needed. Plaintiffs have fully satisfied their duties to the proposed classes to date, and each is committed to fully prosecuting this action.

Second, Plaintiffs have retained qualified counsel with substantial experience in class-action litigation, ensuring the claims will be vigorously and sensibly prosecuted. Holleman & Associates, P.A., has substantial experience in litigation of matters similar to the one now before the Court. Plaintiffs' counsel has managed and conducted numerous class and collective action disputes and are deeply familiar with the substantive law which underlies the current claims. Lead counsel, John Holleman, has been practicing law in Arkansas since 1991. He has handled numerous matters of complex litigation, primarily wage-and-hour collective and class actions, including: *Allen v. Pulaski County*, No. 4:10-cv-01514 SWW (E.D. Ark. 2010); *Benefield v. Convacare Mgmt.*, No. 4:12-cv-00589 KGB (ED. Ark. 2012); *Broach v. Ark. Convalescent Ctrs., Inc.*, Case No. 5-12-cv-143 DPM (E.D. Ark. 2012); *Campbell v. Reliance Healthcare, Inc.*, No. 4:12-cv-00176 DPM (E.D. Ark.

2012); *Charles v. Horizon Foods, LP*, No. 2013-2915 (Jefferson County Cir. Ct. 2013); *Conners v. Gusano's Chicago Style Pizzeria*, 4:14-cv-002 BSM (E.D. Ark. 2014); *Croft v. Protomotive, Inc.*, No. 3:12-cv-031102 PKH (W.D. Ark. 2012); *Farnsworth v. So. Paramedic Servs., Inc.*, 4:11-cv-00760 BSM (E.D. Ark. 2011); *Garcia v. FTS International Services, LLC*, Case No. 4:15-CV-963-Y (N.D. Tex. 2015); *Gay v. Saline County*, No. 4:03CV00564 HLJ (E.D. Ark. 2006); *Graham v. Central Defense Security*, No. 4:12-cv-460 KGB (E.D. Ark. 2012); *Hannibal v. Lawson Contracting, LLC*, No. 4:12-cv-753 KGB (E.D. Ark. 2012); *Hawkins v. So. Heritage Health & Rehab., LLC*, No. 4:13-cv-00002 SWW (E.D Ark. 2013); *Hewett v. Gerber Prods. Co.*, No. CV-12-75 (Sebastian County Cir. Ct. 2012); *Israsena v. Chalak-M&M AR1, LLC*, 4:15-cv-0038 JLH (E.D. Ark. 2015); *Jones v. Corizon, Inc.*, No. 5:10-cv-00057 KGB (E.D. Ark. 2012); *Kelly v. Healthcare Services Group, Inc.*, No. 2:13-cv-00441 JRG (E.D. Tex. 2013); *Lopez v. Ozark Empire Distributors, Inc.*, No. CV 14-1311 (Benton County Cir. Ct. 2015); *Maclin v. Montgomery & Sons Construction, Inc.*, No. 4:12-cv-0005 DPM (E.D. Ark. 2012); *Morgan v. El Dorado Home Care Services, LLC*, 1:16-cv-01007 SOH (W.D. Ark. 2016); *Nixon v. Costner Excavating, Inc.*, No. 4:11-cv-0578 KGB (E.D. Ark. 2011); *Okeke v. Ark. Dep't of Veterans Affairs*, 60CV-13-2403 (Pulaski County Cir. Ct. 2012); *Reyes v. Labor, Inc.*, No. 5:11-cv-05192-JLH (W.D. Ark.  2011); *Reynolds v. BLM Co.*, No. 12-1105 SOH (W.D. Ark. 2012); *Smith v. Frac Tech Services, Ltd.*, No. 4:09CV00679 JLH (E.D. Ark. 2009); *Taggart v. Davis Nursing Ass'n, No.*, 5-12-cv-0144 (E.D. Ark. 2012); *Thompson v. Corizon, Inc.*, No. 5:12-cv-0164 KGB (E.D. Ark. 2012); *Taylor v. Galaxy 1 Mktg., Inc.*, No. 4:11-cv-01255 GAF (W.D. Mo. 2011); and *Wright v. Pulaski County*, No. 4-09-CV-0065 SWW (E.D. Ark. 2009).

Plaintiffs have met the adequacy requirement and satisfied all four Rule 23(a) prerequisites.

### B. The Rule 23(b) Requirements are Satisfied.

    1. *Predominance: The common questions of law and fact predominate over any individual inquiries.*

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623–24. No bright line rules determine predominance. "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). "Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915–16 (10th Cir. 2018) (internal citations omitted).

The fundamental question is whether the group aspiring to class status seeks to remedy a common grievance. The Court looks to whether some elements of claims and defenses can be proven on a systematic, class-wide basis. *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005). Individualized damages issues, however, are not typically sufficient to defeat certification. *See Casey v. Coventry HealthCare of Kan., Inc.*, 2010 U.S. Dist. LEXIS 94405, at *5 ("Numerous courts have recognized that damages are inherently individualized and do not present a major obstacle to certification."); *Ford v. Townsends of Ark., Inc.*, Case No. 4:08-cv-00509, 2010 U.S. Dist. LEXIS 46093 (E.D. Ark. April 9, 2010)

("[A]lthough individual damages may vary for some class members, these damages issues do not predominate."); *In re Workers' Compensation*, 130 F.R.D. 99, 110 (D. Minn. 1990) (explaining that individualized damages issues "are rarely a barrier" to certification).

As discussed above, there are numerous common questions that are susceptible to proof on a class-wide basis. The answers to those common questions will collectively resolve Plaintiffs' and the putative class members' claims and do not turn on individualized issues. For example, at the case management hearing, the parties agreed that Plaintiffs' claims under the Arkansas Minimum Wage Act will largely turn on whether there was an employer-employee relationship between Plaintiffs, DARP, and Hendren. *See, e.g.,* (*Transcript of Case Management Hearing* [Ex. W] at 82:3–10, 89:13–23, 100:11–19). Whether an employee-employer relationship existed under the AMWA can be determined on a class-wide basis with common evidence, and that inquiry predominates over any questions affecting only individual class members. *See Bonton v. Centerfold Entm't, Inc.*, No. 6:14-CV-6074, 2015 U.S. Dist. LEXIS 65408, at *8–9 (W.D. Ark. May 19, 2015) (granting class certification of AMWA claim and explaining that whether an employer-employee relationship existed is "key to each individual class member's claims and may be answered through the presentation of common evidence."). DARP and Hendren concede this issue and moved to dismiss Plaintiffs' complaint, arguing that an employee-employer relationship did not exist. (Docs. 13 & 15). This Court denied dismissal of Plaintiffs' AMWA claims and acknowledged that the "critical issue" to those claims is whether Plaintiffs' were "employees" of DARP and Hendren. (Doc. 35, at *4).

20

DARP and Hendren will likely argue the Supreme Court's decision in *Comcast v. Behrend*, 133 S. Ct. 1426 (2013), precludes certification where individual damages issues exist. As noted by the *Comcast* dissent, however, Rule 23(b)(3) does not require as a prerequisite to class certification "that damages attributable to a class-wide injury be measurable 'on a class-wide basis,'" *Id.* at 1436, and *Comcast* did not hold otherwise. *Id.* Rather, the Supreme Court held the Third Circuit erred by "refusing to entertain arguments against [plaintiffs'] damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination . . . ." *Id.* at 1432–1433. In *Comcast*, certification was inappropriate because the plaintiffs' damages model did not distinguish between damages caused by the only antitrust violation certified for class treatment (overbuilder competition) and the other theories presented in the case and rejected for certification. *Id.* at 1433.

Many circuit courts have affirmed certification where individual damage calculations might be necessary. *See, e.g.*, *Tadiff v. Knox County*, 365 F.3d 1, 6 (1st Cir. 2004); *Chiang v. Veneman*, 385 F.3d 256, 273 (3d Cir. 2004); *Bertulli v. Indep. Assn. of Continental Pilots*, 242 F.3d 290, 298 (5th Cir. 2001); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564-66 (6th Cir. 2007); *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). It is considered "hornbook law" that individual damages calculations should not scuttle class certification under Rule 23(b)(3). *See, e.g.*, 7AA C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1781 (3d ed. 2005); 2 W. Rubenstein, Newberg on Class Actions § 4.54 (5th ed. 2012) (stating that "courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage

21

determinations.").

Even the Advisory Committee's notes on Rule 23 explain that certification may be proper where individual damages cannot be proven on a class-wide basis. *See* Advisory Committee's 1966 Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App., p. 141 ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.").

Where liability can be determined on a class-wide basis, damages issues can be resolved in a number of ways, such as the use of a magistrate or special master to determine damages. *See, e.g.*, *Carnegie v. Household Inter., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Indeed, when the claims of putative class members are relatively small such that "it is class treatment or nothing, the district court must carefully explore the ways of overcoming problems in calculating individual damages." *Epenschied v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013).[3]

Here, any concern related to calculating damages of individual class members is largely academic. As discussed above, Plaintiffs' damages, and those of all putative class members, can be calculated mechanically based on DARP and Hendren's records. DARP

---

[3] The Seventh Circuit affirmed denial of certification in *Epenshied*, but noted plaintiffs' counsel objected to bifurcation, subclassing, and refused to provide a plan for litigating damages. *Id.* at 775-76. It is also worth noting the case settled, and the sole purpose of the appeal was determining whether the class representatives would be entitled to an enhancement fee. *Id.* at 772.

and Hendren recorded the number of hours each Plaintiff and putative class member worked. For Plaintiffs' claims under the AMWA, all that remains is the straightforward mathematical computation of multiplying hours worked by the AMWA's minimum wage and overtime requirement. The individualized damages calculations in this case are not of the sort considered in *Comcast*, and the presence of individual damage issues should not preclude certification.

2. *Superiority: A class action is the superior method of resolving Plaintiffs' and putative class members' common claims against DARP and Hendren.*

The superiority requirement "insures that there is no other available method of handling the litigation which has greater practical advantages." *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678 (D. Kan. 2009). The Rule identifies four factors the Court should consider when assessing superiority:

- Interest in individually controlling prosecution;

- Extent and nature of any litigation concerning the controversy already begun by or against class members;

- Desirability of concentrating litigation in the particular forum; and

- Likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The factors listed in Rule 23(b)(3) all show the class-action device is superior here. Individual class members do not have a significant interest in individually controlling prosecution of their claims, primarily because the claims are relatively small in comparison to the costs of litigation. Courts have frequently recognized the class action is the superior method to adjudicate these types of claims. *See, e.g., Deposit Guaranty Nat'l*

*Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). The second Rule 23(b)(3) factor also supports certification here because the Court has already determined that Plaintiffs' claims against DARP and Hendren will proceed in this action. (Docs. 2 & 35). Moreover, the proposed class members all attended DARP and worked for Hendren Plastics in Arkansas. All the relevant events took place in Arkansas, and the Western District is a desirable forum. There also do not appear to be any unusual difficulties in managing this class action. If a class were not certified, each putative class member would need to file their own suit alleging identical causes of action, raising the same issues, and involving the same evidence. It is far more efficient to litigate DARP and Hendren's liability in a single action, rather than clogging the docket with hundreds of lawsuits, wasting the resources of the Court and parties, not to mention the risk of inconsistent adjudications.

## V. CONCLUSION

This case presents preliminary questions common to all proposed class members. Hendren and DARP's scheme applied to all members of the putative class and the putative class members all assert the same causes of action and seek the same relief. All of the Plaintiffs' and putative class members' claims rise and fall on the same issues and there are no individual issues that preclude certification. Deciding these common issues as a class will provide real efficiency and preserve the resources of the Court and parties. The Court should grant Plaintiffs' motion for class certification and enter an order:

a)   Certifying a class defined as:

     All individuals who were DARP participants at any time from
     October 23, 2014 until the present, who worked for Hendren Plastics,
     Inc. in the State of Arkansas during their time at DARP.

b)   Appointing Mark Fochtman, Corby Shumate, Michael Spears, Andrew

     Daniel, Fabian Aguilar, and Sloan Simms as class representatives;

c)   Appointing Holleman & Associates, P.A. as class counsel; and

d)   Granting any such other relief as the Court deems just and proper.


                         Respectfully Submitted,

                         HOLLEMAN & ASSOCIATES, P.A.
                         1008 West Second Street
                         Little Rock, Arkansas 72201
                         Tel. 501.975.5040
                         Fax 501.975.5043

                         _/s/ Timothy A. Steadman_
                         John Holleman, ABN 91056
                         jholleman@johnholleman.net
                         Timothy A. Steadman, ABN 2009113
                         tim@johnholleman.net
                         Jerry Garner, ABN 2014134
                         jerry@johnholleman.net

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy A. Steadman, hereby certify that a true and correct copy of the foregoing document was filed via CM/ECF on September 17, 2018, which will send notification to all counsel of record.


By: _/s/ Timothy A. Steadman_
      Timothy A. Steadman