IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARK FOCHTMAN; CORBY SHUMATE;
MICHAEL SPEARS; ANDREW DANIEL;
FABIAN AGUILAR; and SLOAN SIMMS
Individually, and on Behalf of All Others
Similarly Situated                                                        PLAINTIFFS

V.                          CASE NO. 5:18-CV-5047

DARP, INC.; HENDREN PLASTICS, INC.;
and JOHN DOES 1-29                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are two motions. The first is a Motion for Class Certification (Doc. 44) filed on behalf of all Plaintiffs on September 17, 2018. The second is a Motion to Withdraw as Class Representative (Doc. 46) filed by Plaintiff Corby Shumate on October 31, 2018. Defendant DARP, Inc. ("DARP") filed a Response in Opposition to Class Certification (Doc. 47), as did Defendant Hendren Plastics, Inc. ("Hendren Plastics") (Doc. 48). Thereafter, Plaintiffs filed a combined Reply (Doc. 50) to both Defendants' Responses. Defendants did not file any response in opposition to Mr. Shumate's Motion to Withdraw as Class Representative.

On December 14, 2018, the Court held a hearing on the pending motions. After oral argument concluded, the Court ruled from the bench, granting both the Motion for Class Certification and the Motion to Withdraw as Class Representative. This Order sets forth the bases for the Court's decisions in greater detail. In the event anything in this Order conflicts with statements made from the bench, this Order will control.

1

## I. BACKGROUND

Plaintiffs filed the instant Complaint on March 9, 2018,[1] alleging violations of law arising from their participation in a residential drug rehabilitation program run by DARP, which stands for "Drug and Alcohol Recovery Program." Plaintiffs seek to represent a class of similarly-situated individuals who were ordered to attend DARP by drug courts in Arkansas and Oklahoma. State drug courts routinely allow certain individuals charged with drug crimes to participate in diversion programs, where they are given the option of completing drug and alcohol rehabilitation in lieu of imprisonment. There are a number of inpatient drug rehabilitation centers that partner with these drug courts to provide inpatient services. DARP's particular mission is "the ethic of hard work." (Doc. 44-1). To that end, DARP requires its residents to work during their time at DARP. DARP advises its residents in writing that it will "never charge . . . any fees or costs; however, participants are expected to work at full-time jobs knowing that they will not receive any immediate financial compensation for their work." (Doc. 44-13).

In fact, the "Admission Agreement" that each resident signs states the following:

> I understand that I will not be required to pay the D.A.R.P. Foundation any fee for the services rendered me in connection with the D.A.R.P. recovery process. I understand that I will be furnished room and board, clothing, and other necessities. I understand that participants of the D.A.R.P. Foundation receive no pay while in the program and that the money earned goes toward operation of the D.A.R.P. Foundation. This includes all overtime accrued while working and participating at D.A.R.P., for which there will be no compensation.

---

[1] This case was originally filed in Benton County, Arkansas Circuit Court on October 23, 2017, and removed to this Court on November 6, 2017, as Case Number 5:17-CV-05228, *Mark Fochtman and Shane O'Neal v. CAAIR, Inc., Simmons Foods, Inc, DARP, Inc., and Hendren Plastics, Inc.* ("*Fochtman I*"). This Court found jurisdiction was proper under the Class Action Fairness Act and denied Defendants' motions to remand on February 27, 2018 (Doc. 2). The instant case was severed from *Fochtman I* on February 27, 2018. *See* Case Number 5:17-CV-05228, Doc. 97.

(Doc. 44-24).

In a nutshell, then, DARP residents agree to forego payment of their wages in exchange for a bed to sleep in, the option to participate in AA or NA meetings, transportation to and from the job that DARP arranges for them, "healthy meals at no cost," and "basic necessities of hygiene supplies to include toothpaste, shampoo, toothbrushes, razors, etc. at no cost," (Doc. 44-13).

The record indicates that, at some point, DARP entered into an agreement to provide resident labor to Hendren Plastics. See Doc. 21-1. According to the agreement, DARP would send its residents to Hendren Plastics to work daily shifts. The residents would clock in and out of the factory, just as non-DARP employees would, and Hendren Plastics would keep track of the hours the residents worked. The agreement affirms that DARP's "goal" in working with Hendren Plastics was "to provide a reliable work force for [the] company." Id. Accordingly, DARP residents worked at "a flat rate of $9.00 per man hour" for the first forty hours per week, and at a rate of "$13.50 an hour" for every hour worked over forty per week. Id. Under this scheme, the residents were never paid directly for their work. Instead, Hendren Plastics would calculate the hours worked at the flat rates agreed upon and then cut lump-sum checks to DARP for the residents' labor.

The residents understood that DARP would not be paying them wages. They all signed an identical document entitled "Disclaimer of Employment Relationship," which explained that: (1) they would not receive wages or otherwise be paid during their stay at DARP; (2) they might be offered "a benefit package, gratuity/stipend" by DARP—that was "[n]ot to include any accrued overtime"—"upon successful completion" of the program; and (3) they would not be considered "employees" of DARP and had no right to claim workers' compensation or unemployment benefits. (Doc. 1-11).

The class action Complaint contains claims concerning Defendants' alleged failure to pay minimum wages and overtime compensation under the Arkansas Minimum Wage Act ("AMWA") (Counts I and II).[2] The Motion for Class Certification (Doc. 44) requests that the Court certify a class defined as: "All individuals who were DARP participants at any time from October 23, 2014 until the present, and who worked for Hendren Plastics, Inc. in the State of Arkansas during their time at DARP." Plaintiffs further request that their counsel be appointed as class counsel and that Plaintiffs Fochtman, Spears, Daniel, Aguilar, and Simms be appointed as class representatives.[3]

Defendants DARP and Hendren dispute whether: the purported class is sufficiently numerous to be appropriate for class certification; there are questions of law and fact common to the class; the putative class representatives have claims that are typical of those of the rest of the class; the class representatives will adequately protect the interests of the class; class issues predominate over individual issues; and a class action is a superior method of resolving this dispute, as compared to individual lawsuits. Below, the Court will consider these arguments.

## II. LEGAL STANDARD

Pursuant to Rule 23, certifying a class action requires a two-step analysis. First, a class action may be maintained if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). Second, a class action will be deemed

---

[2] Counts III and IV were dismissed without prejudice on June 27, 2018 (Doc. 35).

[3] Plaintiff Corby Shumate has moved to withdraw as class representative. (Doc. 46).

appropriate if a court finds that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

An implicit requirement for any class certification inquiry involves a court's assessment as to the ascertainability of the class. The description of a proposed class must be sufficiently definite to permit class members to be identified by objective criteria. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996–97 (8th Cir. 2016). "The requirement that a class be clearly defined is designed primarily to help the trial court manage the class. It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation." *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003).

The district court retains "broad discretion in determining whether to certify a class, recognizing the essentially factual basis of the certification inquiry and . . . the district court's inherent power to manage and control pending litigation." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (internal quotations and citations omitted).

### III. DISCUSSION

#### A. Numerosity (Rule 23(a)(1)) and Ascertainability

The Court begins its analysis by assessing whether the class is so numerous that joinder of all members is impracticable, and, relatedly, whether the members of the class are readily ascertainable. The Eighth Circuit, "unlike most other courts of appeals, has not outlined a . . . separate, preliminary requirement" of ascertainability that would require plaintiffs to demonstrate a method of identifying class members that is administratively

5

feasible. See *Sandusky Wellness*, 821 F.3d at 996. Rather, the Eighth Circuit simply adheres to a rigorous analysis of the Rule 23 factors, and while it recognizes that this analysis necessarily entails that a class be "adequately defined and clearly ascertainable," the focus of this threshold inquiry is on whether the proposed class definition identifies class members by objective criteria, rather than on the administrative concerns that are already taken into account by the Rule 23(b)(3) factors of predominance and superiority. *See id.*

Defendants do not dispute that the precise number of class members is either known or may be discovered fairly easily. Plaintiffs maintain there are approximately 180 former DARP residents who meet the class definition, and Defendants do not dispute that number. Instead, DARP argues that it is unclear at this time whether any of the 180 putative class members will ultimately want to remain as members of the class or will instead opt out. DARP claims "[t]his absence of clarity means Plaintiffs have not proven that members of the proposed class are sufficiently numerous to warrant certification." (Doc. 47, p. 5).

DARP's argument above tends to demonstrate that it does not understand what the numerosity requirement of Rule 23 actually entails. In order to make a finding that a class will be so numerous that joinder will be impractical, the Court does not need to consult its crystal ball and predict how many class members will opt out and how many will remain. The numerosity requirement asks, simply, how many individuals meet the class definition. Here, the number is 180, and the class members' identities are easily ascertainable.

DARP also attempts to muddy the waters by making a merits-based argument about numerosity. DARP contends that few, if any, of the 180 putative class members will ultimately be classified as employees under the AMWA and therefore will not be entitled to damages. Obviously, it would be improper for the Court to delve deeply into the merits at the pre-certification phase, and this argument will be disregarded for that reason.

Turning to Hendren Plastics, it offers two arguments as to why the numerosity inquiry has not been met. Hendren Plastics does not dispute there are 180 potential class members, but it argues that Plaintiffs have not sufficiently explained why this case could not be resolved in 30, 50, or even 180 separate lawsuits. The Court rejects this argument as frivolous. It defies common sense to argue that 180 separate lawsuits brought by similarly-situated individuals, litigating the same issues of liability, would somehow be more efficient and more cost-effective than a class action. Hendren Plastics' second argument suggests—without any citation to authority—that Plaintiffs should be required to dismiss this lawsuit in favor of pursuing their claims in an administrative proceeding before the Arkansas Department of Labor ("DOL"). At the motion hearing, the Court inquired of counsel for Hendren Plastics whether he contended that the Plaintiffs had a duty to exhaust administrative remedies with the DOL before initiating a wage-and-hour lawsuit under the AMWA. Counsel responded that he was not aware of such a duty. For all these reasons, the numerosity and ascertainability requirements are easily satisfied.

### B. Commonality (Rule 23(a)(2))

The requirement of commonality does not mean "that every question of law or fact be common to every member of the class." *Paxton v. Union Nat. Bank*, 688 F.2d 552,

561 (8th Cir. 1982). Furthermore, multiple common questions are not required in order to establish commonality. According to the Supreme Court, "[e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations in original, internal quotation marks and citation omitted).

Plaintiffs list the following questions of law and fact as common to the class and subject to class-wide proof:

- whether class members were employees of DARP under the AMWA;

- whether class members were employees of Hendren Plastics under the AMWA;

- whether DARP and Hendren Plastics failed to pay them at least the minimum wage;

- whether DARP and Hendren Plastics failed to pay them overtime compensation;

- the amount of credit (for food/board/facilities) DARP and Hendren Plastics may claim against any minimum wages owed; and

- whether DARP and Hendren Plastics complied with AMWA's record-keeping requirements.

It is also undisputed that all class members:

- were DARP residents who lived at DARP and worked at Hendren Plastics under substantially the same conditions;

- clocked in and out in the same way;

- had their hours recorded in the same manner; and

- were paid the same negotiated hourly rates for their work.

Defendants' arguments on the issue of commonality go only to the merits of the case. First, Defendants note that all class members signed the same "Disclaimer of

Employment Relationship" form (Doc. 1-11), which, to Defendants, definitively proves that the class members were *not* employees under the AMWA and have no valid claims for damages. Defendants, once again, improperly urge the Court to decide the merits of the case and make a finding that Plaintiffs and the putative class are not employees. This the Court cannot do at the class certification stage. See *Amgen v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

More to the point, the Court's reading of *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 292 (1985), is that even a worker who affirmatively declines the law's protections may still be considered an employee and may still be entitled to minimum wage and overtime compensation. In the case at bar, it is undisputed that DARP residents actually received some amount of in-kind compensation—in the form of meals, lodging, and other amenities—and that DARP agreed in writing to provide such amenities to all residents *in exchange for* work/wages. See Doc. 44-13. The law is clear that the test for employment is one of "economic reality." *Alamo*, 471 U.S. at 301. The fact that all putative class members in this case shared the same economic reality weighs in favor of finding that they share common, dispositive questions of law and fact.

With regard to Defendants' argument that DARP residents received different in-kind benefits, the Court is not persuaded that these variations were so significant that they cannot be easily accounted for in the calculation of damages, if such becomes necessary. According to Defendants, DARP served extra meals to some workers but not

9

others (if they worked the late shift at the factory), transported some workers but not others to the doctor (if they needed medical care), provided clothing and toiletries to workers who needed them (but not to those who brought these items from home), and saved money on food and housing for those workers who went home on the weekends (because they were granted furloughs). (Doc. 48, p. 29). Plaintiffs point out that the AMWA only allows an employer to take a credit of up to $0.30 per hour for board and lodging—regardless of the true cost of the lodging or the true cost of the food provided. (Doc. 50, p. 12). So, regardless of whether DARP offered a given resident four meals a day or three meals a day, the statutory cap on credits would make the damages calculation a bit more straightforward than Defendants would have the Court believe. Any other variations in the in-kind benefits DARP provided to its residents are not significant enough to defeat class certification, in the Court's view.

Finally, Defendants' argument that some workers received a stipend upon successful completion of the DARP program, while others did not, does not mean the case is unsuitable for class certification. Provided that the calculation of damages will not bog down the litigation and render the class action model unworkable and inefficient, there is no reason to refuse to certify a class simply because some class members may require certain, special deductions in their damage calculations. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (finding that individual damages calculations are permissible if they do not "overwhelm questions common to the class"). Here, the stipend DARP paid to successful residents who completed the program was either $500 (for six months of successful compliance) or $1000 (for twelve months). It should be a simple matter of arithmetic to subtract those stipends from the damage totals of the individual

workers who received them. The Court finds that commonality inquiry weighs in favor of class certification.

## C. Typicality (Rule 23(a)(3))

The typicality inquiry asks whether the named Plaintiffs' claims are typical of those of the rest of the class. Defendants rehash their arguments with respect to commonality and maintain that the named Plaintiffs' claims cannot possibly be typical of the rest of the class because each class member must have had his own, individual expectations about whether he was an employee and entitled to receive minimum wages and overtime compensation. Again, the Court rejects Defendants' arguments for the reasons previously stated. Since Plaintiffs were all DARP residents who worked at Hendren Plastics under substantially the same conditions as the rest of the putative class, the Plaintiffs' claims are typical of those of the class.

## D. Adequacy of Class Representatives (Rule 23(a)(4))

DARP argues that the named Plaintiffs will not adequately represent the interests of the class, simply because their interests are allegedly not aligned with the majority of former DARP residents. DARP contends that most, if not all, of its former residents benefited from the program and will have no interest in being part of this class action lawsuit. Again, DARP seems to think that if some class members opt out in the future, that fact is somehow relevant to the class-certification analysis. It is not. Plaintiffs' interests and legal claims align with those of *all* the individuals who could potentially be members of the class. It follows logically that if any class member later chooses to opt out, Plaintiffs will still be adequate representatives of all those class members who decide to remain in the lawsuit.

As for Hendren Plastics, it suggests that Plaintiffs will not make adequate class representatives because they are convicted felons with drug dependency issues. Most, if not all, class members are also convicted felons with drug dependency issues, by virtue of the nature of the claims at issue in this case. To suggest, without more, that a felon could never serve as a class representative strikes the Court as rather a specious argument. Further, Hendren Plastics has failed to offer any examples of Plaintiffs behaving inappropriately in this litigation or refusing to participate. To the contrary, to the Court's knowledge, all Plaintiffs have actively participated in discovery and have adequately prosecuted this case, both on their own behalf and on behalf of all others similarly-situated. For these reasons, the Court finds that the Plaintiffs will adequately represent the claims and interests of the class.

### E. Requirements of Rule 23(b)

In addition to finding that Rule 23(a) has been satisfied, the Court must also consider whether one of three possible requirements of Rule 23(b) has been met. In particular, the Court must determine if "questions of law or fact common to class members predominate over any questions affecting only individual members"—which is commonly referred to as the "predominance" inquiry—and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"—which is referred to as the "superiority" inquiry. Fed. R. Civ. P. 23(b)(3). The following factors are pertinent:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

### 1. Predominance

With respect to predominance, the relevant inquiry is whether class issues will tend to predominate over individual issues. Plaintiffs contend that the salient question here is whether the residents of DARP were employees of DARP and/or Hendren Plastics. That is a question that depends on the economic reality of the workers' situations. It is undisputed that all putative class members worked in the same location and under the same conditions, were paid the same hourly rates, and were given substantially the same in-kind benefits in exchange for their work. Defendants contend that the Court should not find that class issues predominate over individual ones because it is unknown at this time whether any class members will ultimately qualify as employees under the AMWA, due to their differing expectations, intentions, and motivations in choosing DARP for inpatient substance abuse treatment. The Court rejects Defendants' merits-based arguments for the reasons previously explained. Class issues will tend to predominate over individual ones in this matter.

### 2. Superiority

The second and final factor to consider in the Rule 23(b) analysis is whether the class action is a superior means of resolving this dispute as compared to other litigation methods. According to the Supreme Court, the "principal purpose" of a class action is to advance "the efficiency and economy of litigation." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974). In this regard, Rule 23 class actions may be viewed as having been created as a management tool to make litigation easier, not more complicated.

Plaintiffs here advise that there are approximately 180 individuals who meet the class definition and share common claims for damages and common questions of law and fact. Defendants really do not disagree. It will be far more efficient to dispose of all class members' claims in one forum rather than entertain piecemeal litigation. Furthermore, the Court does not believe that the management of this class action will be overly complex or burdensome—and will certainly not be more burdensome than litigating 180 separate lawsuits on the same question of liability. The superiority requirement is therefore satisfied.

## IV. CONCLUSION

For all these reasons and those stated in open court at the class certification hearing, **IT IS ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 44) is **GRANTED**.

**IT IS FURTHER ORDERED** that Separate Plaintiff Corby Shumate's Motion to Withdraw as Class Representative (Doc. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that the certified class is defined as follows:

All individuals who were DARP participants at any time from October 23, 2014, until the present, and who worked for Hendren Plastics, Inc. in the State of Arkansas during their time at DARP.

**IT IS FURTHER ORDERED** that Plaintiffs Mark Fochtman, Michael Spears, Andrew Daniel, Fabian Aguilar, and Sloan Simms are designated as Class Representatives.

**IT IS FURTHER ORDERED** that the following attorneys are designated as Class Counsel: Jerry D. Garner, John Holleman, and Timothy A. Steadman.

**IT IS FURTHER ORDERED** that no later than **February 28, 2019**, Class Counsel must submit a motion for approval of a proposed plan of notice and proposed notice

forms, in accordance with Rule 23(c)(2)(B). According to the Rule, the proposed notice should be "the best notice that is practicable under the circumstances" and should "clearly and concisely state in plain, easily understood language" all the information set forth at subsection (c)(2)(B)(i)-(vii).

**IT IS SO ORDERED** on this 31st day of January, 2019.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE