# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2061
_____

Mark Fochtman, individually, and on behalf of all others similarly situated; Corby Shumate, individually, and on behalf of all others; Michael Spears, individually and on behalf of all others; Andrew Daniel, individually and on behalf of all others; Fabian Aguilar, individually and on behalf of all others; Sloan Simms, individually and on behalf of all others,

*Plaintiffs - Appellees*,

v.

Hendren Plastics, Inc.,

*Defendant - Appellant*,

------------------------------

Arkansas Prosecuting Attorney Association; Simmons Foods; Simmons Pet Food, Inc.; Work-Based Rehabilitation Program Graduates; Americans for Prosperity Foundation; Texas Public Policy Foundation; Cenikor Foundation; CAAIR, Inc.; R&R Engineering,

*Amici on Behalf of Appellant(s)*.
_____

No. 20-2068
_____

Mark Fochtman, individually, and on behalf of all others similarly situated; Corby Shumate, individually, and on behalf of all others; Michael Spears, individually and on behalf of all others; Andrew Daniel, individually and on behalf of all

others; Fabian Aguilar, individually and on behalf of all others; Sloan Simms, individually and on behalf of all others,

*Plaintiffs - Appellees*,

v.

DARP, Inc.,

*Defendant - Appellant*,

------------------------------

Arkansas Prosecuting Attorney Association; Simmons Foods; Simmons Pet Food, Inc.; Work-Based Rehabilitation Program Graduates; Americans for Prosperity Foundation; Texas Public Policy Foundation; Cenikor Foundation; CAAIR, Inc.; R&R Engineering,

*Amici on Behalf of Appellant(s)*.

_____

Appeals from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: September 23, 2021
Filed: August 25, 2022

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Mark Fochtman and five others brought class action suits against DARP, Inc. and Hendren Plastics, Inc. The plaintiffs, who were participants in a court-ordered

drug and alcohol recovery program, alleged that DARP and Hendren failed to pay class members the minimum wage required by the Arkansas Minimum Wage Act. On cross-motions for summary judgment, a principal fighting issue was whether the plaintiffs were "employees" of DARP and Hendren when they performed work for Hendren as part of the program. The district court concluded that the class members were employees, and resolved the motions in favor of the class. On appeal by DARP and Hendren, we reach a contrary conclusion, and therefore reverse the judgment.

I.

DARP is a non-profit drug and alcohol recovery program that caters to parties who can avoid imprisonment in a criminal case by agreeing to participate with DARP. As a residential program, DARP provides its participants with room and board, clothing, and other necessities. DARP does not charge costs or fees to those who participate in the program.

DARP states that developing a work ethic is central to its recovery program, and participants work for local for-profit businesses as part of the program. DARP provides transportation to and from work, but does not compensate the participants for work performed while in the program. The local businesses also do not pay the participants, but they send DARP a predetermined amount of money for each hour worked by a DARP participant. These payments from the local businesses are DARP's only revenue.

DARP sent some participants to work at Hendren Plastics, a local for-profit business. Hendren did not pay the DARP participants, but agreed to pay the DARP organization based on the number of hours that participants worked at Hendren. Hendren's payments equaled $9.00 per regular hour, and $13.50 per overtime hour, worked by a DARP participant—amounts that exceeded the minimum wage in Arkansas of $6.25 per regular hour and $9.38 per overtime hour. Hendren increased

-3-

these amounts to $9.20 per hour and $13.80 per hour, respectively, in 2015, again exceeding the highest minimum wage rates during the time period at issue: $8.50 per regular hour and $12.75 per overtime hour.

Fochtman and the other named plaintiffs represent a class of people who worked for Hendren while at DARP. Most class members were referred to DARP through drug court programs in Arkansas and Oklahoma. These drug offenders were offered the opportunity to complete DARP's recovery program in lieu of serving a term of imprisonment. The typical stay at DARP was six months, although participation could last up to a year.

In October 2017, Fochtman brought an action in Arkansas state court against DARP, Hendren, another work-based recovery program called CAAIR, Inc., and Simmons Foods, Inc., another for-profit business. Fochtman alleged, among other claims, that the defendants failed to pay adequate wages and overtime as required by the Arkansas Minimum Wage Act, Ark. Code. Ann. § 11-4-201 *et seq*.

Simmons removed the matter to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The district court granted motions to sever the action under Federal Rule of Civil Procedure 21, but denied motions by DARP and Hendren to dismiss the case or to remand the action to state court. The court ordered Fochtman to file an amended complaint addressing only those claims that pertained to DARP and Hendren.

After dismissing some of Fochtman's claims, the court certified a class of all DARP participants between October 23, 2014, and the present, who worked for Hendren Plastics in Arkansas during their time at DARP. The parties then filed cross-motions for summary judgment on the question whether the DARP participants were "employees" under the Arkansas Minimum Wage Act. The court determined that the plaintiffs were employees, and that DARP and Hendren were their joint employers.

The court also concluded that the plaintiffs were entitled to liquidated damages under the Act.

Hendren and DARP unsuccessfully moved to vacate the judgment based on the *Rooker-Feldman* doctrine. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Hendren and DARP appeal the court's grant of summary judgment and award of liquidated damages. We review the judgment *de novo*.

II.

As the outset, we must assess whether the district court had subject matter jurisdiction over the action. *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018). Hendren challenges the district court's jurisdiction over the case on two grounds.

First, while acknowledging that removal to federal court was proper under the Class Action Fairness Act ("CAFA"), Hendren argues that the district court lost subject matter jurisdiction when the court severed the claims against DARP and Hendren from the claims against CAAIR and Simmons. Hendren suggests that after the cases were severed, the action against DARP and Hendren no longer met the amount-in-controversy requirement for federal jurisdiction under the CAFA. *See* 28 U.S.C. § 1332(d)(2).

We reject this contention because "jurisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was predicated." *Hargis v. Access Cap. Funding*, 674 F.3d 783, 789 (8th Cir. 2012) (internal quotation omitted). While "[s]everance under Rule 21 creates two separate actions or suits where previously there was but one," *Reinholdson v. Minnesota*, 346 F.3d 847, 850 (8th Cir. 2003) (alteration in original)

-5-

(internal quotation omitted), this does not mean that jurisdiction must be reestablished for each separate action. We see no reason to distinguish severance from other post-removal events, like the denial of class certification or amendment of a complaint, that do not eliminate jurisdiction. *See Buetow v. A.L.S. Enters.*, 650 F.3d 1178, 1182 n.2 (8th Cir. 2011) (CAFA jurisdiction maintained after denial of class certification); *Hargis*, 674 F.3d at 789-90 (CAFA jurisdiction maintained after complaint amended).

Hendren relies on the Fifth Circuit's conclusion in *Honeywell International, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429 (5th Cir. 2005), that severed actions "must have an independent jurisdictional basis." *Id.* at 431. As the Fifth Circuit later recognized, however, the analysis in *Honeywell* related "only to a particular species of severed claims—claims that were never infused with original jurisdiction, but state claims that were tagging along in the tail wind of the original federal claims." *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 637 (5th Cir. 2014). Because the district court here possessed original jurisdiction under the CAFA over the claims against DARP and Hendren at the time of removal, the rationale of *Honeywell* does not apply.

Hendren also argues that the *Rooker-Feldman* doctrine precludes the exercise of subject matter jurisdiction over Fochtman's claims. This doctrine bars a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The basis for the *Rooker/Feldman* doctrine is that, other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and by statute they are precluded from serving as appellate courts to review state court judgments, as that appellate function is reserved to the Supreme Court under 28 U.S.C. § 1257." *Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005).

-6-

Hendren contends that Fochtman's action invites the district court to reject the judgments entered against the DARP participants in state court drug cases that required the offenders to participate in the DARP program. Fochtman, however, does not complain of injuries caused by the drug-court judgments and did not ask the district court to review those judgments. Fochtman does not challenge the drug court's decision to order him to participate in DARP; he argues that DARP and Hendren were required to pay certain wages to him after he entered the program. Hendren points out that the state-court judgments also required participants to follow the rules of the DARP program. But again, this lawsuit concerns whether DARP and Hendren conformed to state law when they declined to pay wages, not whether the DARP participants were required to comply with program requirements. The state drug court judgments did not address or resolve issues under the Arkansas Minimum Wage Act, and the *Rooker-Feldman* doctrine is inapplicable.

The district court had subject matter jurisdiction over the suit under the Class Action Fairness Act. 28 U.S.C. § 1332(d). We have jurisdiction to review the judgment under 28 U.S.C. § 1291.

III.

On the merits, DARP and Hendren argue that the district court erred by concluding that the Fochtman class members were employees of both entities for the purposes of the Arkansas Minimum Wage Act. The Arkansas statute establishes penalties for "employers" who pay "employees" less than the minimum wage. Ark. Code Ann. § 11-4-218.

An employer is defined as one "acting directly or indirectly in the interest of an employer in relation to an employee." Ark. Code Ann. § 11-4-203. An employee is defined as "any individual employed by an employer." To employ means "to suffer or to permit to work." *Id.* The Act provides that courts construing the statute may

-7-

look for guidance to decisions interpreting the Fair Labor Standards Act of 1938 ("FLSA"). *Id.* § 11-4-218(f). The definitions for employer, employee, and employ under the FLSA are comparable to those under the Arkansas Act. *See* 29 U.S.C. § 203.

The ultimate question whether a person is an "employee" under the FLSA or the Arkansas statute is a legal determination. *Karlson v. Action Process Serv. & Priv. Investigations, LLC*, 860 F.3d 1089, 1092-93 (8th Cir. 2017). This legal determination turns on the "economic reality" of the relationship between the parties involved. *See Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 301 (1985). An evaluation of economic reality, in turn, depends on the totality of the circumstances. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Wang v. Hearst Corp.*, 877 F.3d 69, 76 (2d Cir. 2017).

The definition of "employ" as "to suffer or to permit work" is broad, but the Supreme Court has explained that it has discernable limits. In *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), for example, the Court considered whether trainees receiving seven or eight days of instruction as prospective yard brakemen were employees of the railroad that conducted the training. *Id.* at 149-50. The Court concluded that the FLSA's broad definition of "employ" was "obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id.* at 152. The Court cited the Act's purpose to ensure that "every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage." *Id.* But the Court ruled that the Act could not be interpreted "so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction." *Id.* Where the trainees did not expect to receive pay, and the railroad did not receive any "immediate advantage" from the work done by the trainees, the Court held that the trainees were not employees under the Act. *Id.* at 153 (internal quotation omitted).

By contrast, however, even where "associates" of a religious organization in *Alamo Foundation* considered themselves volunteers, and disclaimed any right to a minimum wage, the Court held that the associates nonetheless were employees based on an implied agreement for compensation.  The Court observed that the associates "were entirely dependent upon the Foundation for long periods, in some cases several years," and cited a factual finding that they must have expected to receive in-kind benefits "in exchange for their services."  471 U.S. at 300-01 (internal quotation omitted).  The Court expressed concern that allowing an exception to the minimum wage law for those who express a willingness to work "voluntarily" might allow employers to use superior bargaining power to coerce employees to waive protections under the Act, and could "exert a general downward pressure on wages in competing businesses."  *Id*. at 302.

In the wake of these decisions, leading authorities in difficult cases have deemed it appropriate to examine who is the "primary beneficiary" of an arrangement between parties in a potential employer-employee relationship.  *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536 (2d Cir. 2016); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518 (6th Cir. 2011); *Isaacson v. Penn Cmty. Servs., Inc.*, 450 F.2d 1306, 1309 (4th Cir. 1971).  This court has cited this "primary beneficiary" test favorably and followed a comparable analysis to determine whether an employment relationship exists.  *See Petroski v. H&R Block Enters.*, 750 F.3d 976, 980-81 (8th Cir. 2014); *Blair v. Willis*, 420 F.3d 823, 829 (8th Cir. 2005).  Other courts have done the same.  *See Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199 (11th Cir. 2015); *see also Nesbitt v. FCNH, Inc.*, 908 F.3d 643, 647-48 (10th Cir. 2018) (applying a broader test which takes the primary beneficiary of the relationship into account); *Benjamin v. B&H Educ., Inc.*, 877 F.3d 1139 (9th Cir. 2017) (adopting the primary beneficiary test to evaluate student-worker claims specifically).

One decision concerning work performed for rehabilitative purposes held that a homeless man who spent six months living and working at a rehabilitation center

of the Salvation Army was not an employee. *Williams v. Strickland*, 87 F.3d 1064, 1065 (9th Cir. 1996). The man engaged in "work therapy" in a furniture restoration shop on a full-time basis, refinishing goods that were sold through one of the Salvation Army's thrift stores, and later sorted donations at the center's loading dock. *Id.* Although the center provided the man with room and board, he was required to offset the cost of these benefits by applying for public benefits and turning over the proceeds to the center. *Id.* at 1065, 1067. Under those circumstances, the court determined that there was no implied agreement for compensation, and the resident's stay was "solely" rehabilitative. *Id.* at 1068.

In a more recent case involving a court-approved treatment program, the Second Circuit determined that a resident at a drug and alcohol treatment facility was not an employee. *Vaughn v. Phoenix House N.Y., Inc.*, 957 F.3d 141, 144-45 (2d Cir. 2020). Although the resident was required to perform full-time work at the facility, the court concluded that the resident was the primary beneficiary of the relationship. *Id.* The facility provided the resident with "significant benefits," including "food, a place to live, therapy, vocational training, and jobs that kept him busy and off drugs," but these benefits were not the fruits of an implied compensation agreement with the facility. *Id.* at 146 (internal quotation omitted). Rather, the resident "was permitted to receive rehabilitation treatment there in lieu of a jail sentence." *Id.* The court thus ruled that he was not an employee of the treatment facility.

This case is not precisely analogous to any of those that have come before. The Fochtman class members were typically ordered by a state court to participate in the DARP recovery program for six months as an alternative to serving a term of imprisonment for drug offenses. Under the innovative structure in Arkansas, however, the Fochtman class members did not perform work directly for the recovery facility as in *Vaughn*, but rather performed work at Hendren, a for-profit company. Hendren, in turn, provided funding to the recovery facility in exchange for the work

-10-

performed by DARP participants. This funding enabled the facility, DARP, to maintain its recovery program.

In this situation, it is not possible to declare that the arrangement benefits solely one party or another. As we see it, however, the Fochtman class members were the primary beneficiaries of the arrangement. Unlike in *Alamo Foundation*, there was no implied agreement for compensation. Although DARP provided room and board to its participants, the organization did so because the participants were directed by court order to engage in a recovery program in lieu of imprisonment. As in *Vaughn*, the recovery facility's provision of sustenance was not in-kind compensation for work performed. This case thus comes closer to the rule of *Walling* that the meaning of "employee" does not extend to a person "who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." 330 U.S. at 152.

*Walling* is not entirely parallel, because we cannot gainsay that Hendren received an immediate advantage from the work of the DARP participants. But the overriding consideration is that the DARP participants undertook the recovery program for their own purposes to avoid imprisonment, and they had no reason to expect compensation from Hendren. There was no implied compensation agreement with Hendren, and the company provided no in-kind benefits. As for DARP's receipt of payments from Hendren, this indirect financial benefit to DARP is best seen as the functional equivalent of the full-time work received by the treatment facility in *Vaughn*. Here, DARP received the fruits of the participants' labor indirectly, rather than directly, but the substance of the arrangement is the same. The participants resided at DARP for the purpose of recovery or rehabilitation, and their "work recovery program" was performed to avoid adjudication in the criminal justice system. That work performed by a participant in a court-ordered recovery program also benefitted a third-party business did not make the participant an employee of DARP or Hendren.

-11-

We are strengthened in this conclusion by the fact that the DARP arrangement does not conflict with the principal purposes of the minimum wage statute. *See* Ark. Code Ann. § 11-4-202. There was no risk that DARP participants would be deprived of a minimum standard of living that safeguards their health, efficiency, and general well-being. The court-ordered program is residential placement for a typical period of six months, and participants are guaranteed room, board, and basic necessities as an element of the program. Nor did the Arkansas arrangement threaten to facilitate unfair competition among businesses by depressing pay below the minimum wage. DARP is a non-profit organization with no competitive mission. Hendren is a for-profit business, but it paid more than the minimum wage rate to DARP for each hour worked by a DARP participant. While Hendren may have paid less for DARP participants' labor than the company paid for the labor of other entry-level employees, Hendren accepted workers whose checkered histories might well have justified a market-based pay differential. Even assuming that paying a lower cost for workers with drug problems gave Hendren a competitive advantage over other employers who pay the market rate to workers who are not drug offenders, Hendren's cost per hour exceeded the minimum wage and did not threaten to depress pay below the statutory rate.

\* \* \*

For these reasons, we conclude that the summary-judgment record does not establish that the Fochtman class members were employees of DARP or Hendren. The judgment of the district court is reversed, and the case is remanded for further proceedings.

_____